■ NISHA BUCKINGHAM, Appellant, v SIMON BUCKINGHAM, Respondent. [3 NYS3d 921]—

Order, Supreme Court, New York County (Lori S. Sattler, J.), entered April 29, 2014, which denied plaintiff's postjudgment motion for distribution of 20% of the net proceeds defendant received from his sales of outstanding stock in Mobile Streams PLC (MS), and denied her request for an award of counsel fees in the amount of $25,000, affirmed, without costs.

The plain and unambiguous language of the parties' modification agreement makes clear that defendant shall make a distribution to plaintiff only if, among other things, MS or one of its subsidiaries or related companies is sold. Plaintiff does not claim, and there is no evidence, that this condition precedent was met. Accordingly, plaintiff is not entitled to a distribution (*see Klewin Bldg. Co., Inc. v Heritage Plumbing & Heating, Inc.*, 42 AD3d 559, 560 [2d Dept 2007]). Contrary to plaintiff's contention, she was not entitled, under the terms of the modification agreement, to a distribution merely because defendant sold outstanding stock of MS.

The Supreme Court providently exercised its discretion in

declining to award counsel fees to plaintiff (*see* Domestic Relations Law § 238; *Hoffman v Hoffman*, 81 AD3d 600, 600 [2d Dept 2011]).

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Friedman, J.P., Sweeny, Feinman and Clark, JJ.

Saxe, J., concurs in a separate memorandum as follows: It is not uncommon for clauses of marital agreements to sometimes fail to achieve their intended purpose. This appeal provides us with the opportunity to examine one such clause. My colleagues point to one phrase in the contractual provision at issue that they term "plain and unambiguous," which they rely on as controlling the outcome of this appeal. While I agree that plaintiff wife failed to establish that she was entitled to any payment under the parties' agreement, I write separately because I believe that the contractual provision as written does not comport with either party's understanding of it, and, in fact, under other scenarios, could cause unintended mischief.

Defendant husband is the founder and CEO of a company called Mobile Streams PLC, a publicly traded global mobile media company. This postjudgment litigation concerns defendant's ownership interest in the company. Approximately eight days before their marriage, the parties entered into a prenuptial agreement that included the following provision: "Simon owns approximately 55.83% of the issued and outstanding shares of [Mobile Streams] ['MS']. If MS or any of its subsidiaries or related companies are sold, and the sale takes place after the occurrence of an Operative Event, and the proceeds of sale are not otherwise invested or reinvested in another business enterprise, but rather Simon retains the proceeds for himself and provided the parties are married for five (5) years or more, Simon, will place the following percentages of the net proceeds less the value of the MS shares on the date of marriage, in an account established in Nisha's sole name which shall be deemed Nisha's Separate Property: [¶] (i) if the parties are married for 5 or more years—20%; or [¶] (ii) if the parties are married for 10 or more years—25%; or [¶] (iii) if the parties are married 15 or more years—30%; or [¶] (iv) if the parties are married for 20 or more years—40%; or [¶] (v) if the parties are married for 25 or more years—50%."

During the marriage, the parties executed a modification agreement that modified certain terms of the prenuptial agreement, including the foregoing provision. The modified provision reads: "Simon has heretofore placed in a revocable trust, The Simon David Buckingham Living Trust (Trust), his [MS shares]

on the 3rd day of November, 2008. Simon is the Grantor and Trustee. Nisha is the Successor Trustee. Upon Simon's death, the Trust shall terminate and all of the principal and accrued and accumulated income shall be paid to Nisha. After the parties have been married for a period of three (3) years, *if MS or any of its subsidiaries or related companies are sold, and the proceeds of sale are not otherwise invested or reinvested in another business enterprise, the following percentage of the proceeds (after payment of any taxes and transactional costs due upon such sale,) shall be paid to Nisha in accordance with the length of the marriage* and shall constitute her separate property: [¶] three or more years—twenty (20%) percent; or [¶] eight or more years—twenty-five (25%) percent; or [¶] thirteen or more years—thirty (30%) percent; or [¶] eighteen or more years—forty (40%) percent; or [¶] twenty-three or more years— fifty (50%) percent" (emphasis added).

The parties were divorced on November 14, 2011.

Between May 15, 2013 and October 17, 2013, defendant sold approximately 7,875,000 MS shares (in four installments over the course of a seven-month period) for $7,279,117.62. After the sales, defendant's ownership interest in Mobile Streams was reduced from 55.83% to 28.34%.

Plaintiff demanded a 20% share of the net proceeds from defendant's sales of his MS shares, based on the foregoing provision of the modification agreement. Defendant's initial response to that demand was that the agreement allowed him to reinvest the proceeds from the sale of his MS shares "within a reasonable time period" and that this was an "an ongoing process." He did not then take the position that plaintiff's entitlement only arose if the entire company were sold.

Plaintiff then made the underlying postjudgment motion for distribution of 20% of the net proceeds defendant received from the sales of his MS shares, along with an award of counsel fees in the amount of $25,000. In opposition, defendant took the position that plaintiff's entitlement to the 20% was intended to be limited to the event that "MS or any of its subsidiaries or related companies are sold," which did not encompass his sale of MS shares. He further argued that he had already invested some of the proceeds of the sale in JP Morgan Chase investment and brokerage accounts, and planned to use more of it to purchase an apartment in Beijing for $2.33 million, and that both of those investments satisfied the provision that plaintiff's entitlement only arose if defendant failed to invest the net proceeds of the sale—i.e., that it was not necessary that he reinvest in another business enterprise, as plaintiff had argued.

Defendant also asserted that plaintiff's entitlement to share in the net proceeds of any sale of MS was extinguished upon the divorce.

The motion court denied plaintiff's motion, finding that plaintiff failed to demonstrate the occurrence of a condition precedent to her participation in defendant's profit, namely, a sale of the company or a subsidiary of it. However, the court rejected defendant's contention that plaintiff's right to participate in the proceeds of a sale of MS shares was extinguished upon the parties' divorce. The court declined to address defendant's contention that investing the proceeds in a brokerage account satisfied the reinvestment requirement, insulating him from plaintiff's claim.

The majority affirms the dismissal of plaintiff's claim on the ground that the plain and unambiguous language of the parties' agreement makes clear that a distribution to plaintiff is not required unless MS or one of its subsidiaries or related companies is sold. I agree with that.

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). The operative language of the parties' modification agreement clearly says that plaintiff shall be paid the applicable percentage *"if MS or any of its subsidiaries or related companies are sold, and the proceeds of sale are not otherwise invested or reinvested in another business enterprise"* (emphasis added).

However, despite the clarity of the words, "if MS or any of its subsidiaries or related companies are sold," plaintiff's expectation that she would be entitled to a share of the proceeds from a sale of defendant's *shares*, rather than from a sale of the company itself, was not unreasonable. Indeed, her understanding comports with the focus of the provision as a whole, which begins by discussing defendant's transfer of his MS shares to a trust. Logically, the only reason to segue in one contract provision from the information about defendant's MS shares directly into a discussion of plaintiff's entitlement to a percentage of the sale proceeds is that the sale contemplated by the provision is a sale of defendant's shares.

The provision makes more sense if it is read as if the words "Simon's shares in" appear between the word "if" and the words "MS or any of its subsidiaries," so that it would read "if *Simon's shares in* MS or any of its subsidiaries or related companies are sold, and the proceeds of sale are not otherwise invested or reinvested in another business enterprise, the following per-

centage of the proceeds . . . shall be paid to Nisha." Nevertheless, Nisha cannot prevail here because that is not what the paragraph's language actually provides. "A court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used" (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 66 [1st Dept 2008], *affd* 13 NY3d 398 [2009]).

Defendant, too, seems to have made an assumption about the same provision that is not warranted by the provision's wording. While he correctly contends that the language of the agreement only entitles plaintiff to claim a payment in the event of a sale of the company, he also seems to presume that her entitlement is limited to her percentage of *his receipts from the sale of his shares* in the event of a sale of the company. This presumption, like plaintiff's, is logical; after all, why would defendant provide for plaintiff to be entitled to a percentage of the proceeds of sale of the entire company, when he would receive only a share proportionate to his ownership interest? Yet, nowhere does the provision state that plaintiff's percentage share is to be based on what defendant earned from the sale of his shares in the context of the sale of the company. Rather, it merely says that "if MS or any of its subsidiaries or related companies are sold, and the proceeds of sale are not otherwise invested or reinvested in another business enterprise," plaintiff shall be paid the applicable percentage of *the proceeds* (after payment of any taxes and transactional costs due upon such sale)—*not* defendant's share of the proceeds.

It is counterintuitive that defendant would agree to plaintiff's being entitled to a share of the proceeds of a sale of the *company*, rather than a share of the proceeds of a sale of defendant's *shares* in the company. Nevertheless, that is what the paragraph actually says.

Plaintiff wants the modification agreement to say that she is entitled to a percentage of the proceeds paid to defendant for his shares in the company; defendant wants it to say that plaintiff is entitled to a percentage of the proceeds from the sale of his shares only if he receives those proceeds in the context of a sale of the company as a whole (or a subsidiary). The agreement actually says neither of those things. But, since the modification agreement is not ambiguous, it must be enforced according to its terms (*see Greenfield*, 98 NY2d at 569). Therefore, despite the incongruity, I agree that the contract, as written, does not entitle plaintiff to a distribution.